**Florence A. COEN, Plaintiff,**

v.

**BOULDER VALLEY SCHOOL DISTRICT NO. RE–2, IN the COUNTY OF BOULDER and STATE OF COLORADO et al., Defendants.**

Civ. A. No. C–5433.

United States District Court,
D. Colorado.

Oct. 30, 1975.

William E. Brayshaw and Jeffrey I. Sandman, of Hobbs & Waldbaum, Denver, Colo., for plaintiff.

Gerald A. Caplan, of Caplan & Earnest, Boulder, Colo., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

CHILSON, District Judge.

### PRELIMINARY STATEMENT

The plaintiff was employed by the defendant school district as a teacher for the school years of 1969–70, 1970–71, and 1971–72. Her contract was not renewed for the school year of 1972–73. She had not obtained tenure rights pursuant to the Colorado Tenure Act, 1963 C.R.S. as amended, §§ 123–18–1 to –19.

She brings this action seeking an order restoring her to her teaching position and for recovery of damages.

Her complaint alleges four statements of claim:

*First:* That she had a reasonable expectation of continued employment; that this expectation constituted a property right and that by the nonrenewal of her contract of employment for the 1972–73 school year, she was deprived of this right without due process of law in violation of her rights under the Fourteenth Amendment;

*Second:* That the termination of her employment was accompanied by accusations which imposed on plaintiff a stigma foreclosing other employment opportunities in her chosen profession as a teacher, thereby depriving her of her liberty without due process of law in violation of the Fourteenth Amendment;

*Third:* That school officials criticized her teaching and interfered with the performance of her duties and thereby deprived plaintiff of her "academic freedom" in violation of her rights under the First Amendment;

*Fourth:* The fourth claim realleges the allegations of the first, second and third claims for relief and states no additional facts as a basis for relief. It was apparently added merely to seek damages as a part of the relief she desires.

We have concluded that the evidence does not support the second, third and fourth claims.

We will first dispose of the claims set forth in the second, third and fourth claims for relief and then devote our attention to the first claim.

## FINDINGS OF FACT AS TO THE SECOND, THIRD AND FOURTH STATEMENTS OF CLAIM

As we have previously noted, plaintiff was employed by the district for three school years from the fall of 1969 to the spring of 1972. She was employed as a first grade teacher in Lincoln Elementary School in the "Follow-Through Program".

The "Follow-Through Program" was a federally funded, non-traditional program designed by the Bank Street College of Education in New York, to meet "education needs of minority pupils". (Exhibit 3).

Her supervisors were the principal of the school and the defendant, Betty Treadwell, who was the Director of the Follow-Through Program in the Lincoln School. Her principal during her first school year was one McPheters and the following two years the principal was the defendant, Eugene Rodriguez.

From time to time, Rodriguez and Treadwell made various evaluations of the plaintiff's work and commented to plaintiff about her teaching and offered suggestions and criticisms. (See Exhibits 4, 5, 6, 7, 8, 9, 10, 11, 12, H and S)

At the end of her first year in the spring of 1970, her principal, McPheters, gave her a favorable evaluation and recommended continued employment. In 1971, Rodriguez gave her a favorable evaluation and recommended her continued employment for the following year. In the 1971–72 academic year, there were several evaluations made of plaintiff's work containing criticisms and suggestions by both Rodriguez and Treadwell.

In February 1972, Treadwell recommended to Rodriguez that plaintiff not be reemployed for the next year due to her inability or unwillingness to put into effect the methods and techniques of the Follow-Through Program. (Exhibit H)

On February 28, Rodriguez sent a memorandum to plaintiff (Exhibit 12) advising her of his evaluation of her work and his recommendation that her contract be not renewed for the school year 1972–73. Upon this recommendation, the School Board did not renew her employment.

We have reviewed the written evaluations, memoranda and comments as well as the other evidence relating to the evaluations, comments and criticisms of plaintiff's teaching. We find therein no charge against the plaintiff that might seriously damage her standing and associations in the community, and no suggestion that the plaintiff was dishonest or immoral and no attack on her good name or reputation, honor or integrity.

The charge that the defendants deprived plaintiff of her liberty due process of law is not sustained by the evidence, nor does the evidence support plaintiff's charge that the defendants infringed her First Amendment Rights which she refers to in her complaint as "academic freedom".

The plaintiff, having failed to sustain the burden of proof imposed upon her in proving the allegations of the second, third and fourth claims for relief, these claims should be dismissed with prejudice except that insofar as the fourth statement of claim alleges damages for the constitutional violations alleged in the first statement of claim, the Court will consider it as relating to a claim, under the first statement of claim, for money damages for "emotional stress to the plaintiff - - -".

## CONCLUSIONS OF LAW AS TO SECOND, THIRD AND FOURTH STATEMENTS OF CLAIM

Under the facts as found by the Court, the Court concludes as a matter of law:

1. That the defendants have not deprived plaintiff of her liberty without due process of law in violation of the Fourteenth Amendment;

2. That the defendants have not deprived plaintiff of her "academic

freedom" in violation of the First Amendment;

3. That final judgment of dismissal with prejudice of the second, third and fourth claims should be entered forthwith and that the claim for money damages in the fourth claim shall be considered as an allegation of damages resulting from violations of plaintiff's constitutional rights as alleged in the first claim.

FINDINGS AND OPINION AS TO FIRST CLAIM

The first statement of claim is based upon the plaintiff's contention that she has a property right in continued employment and that she has been deprived of that right without the due process of law required by the Fourteenth Amendment.

The United States Supreme Court in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, recognized that a teacher may have a property right in continued employment of which he or she cannot be deprived without due process of law. In the opinion, the Court pointed out:

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

Whether or not the plaintiff in this action has a property right will be determined by the interpretation under state law of the legal effect of and the rights of the plaintiff under the Colorado Tenure Act, *supra*, the *Handbook of Bylaws, Policy and Procedures* (Handbook, Exhibit 1) issued by the School Board, and a collective bargaining agreement (Exhibit 2) entered into between the School Board and the Teachers' Association (Agreement).

Plaintiff's first statement of claim is based on three basic contentions:

First, that notice of termination of her employment is governed by the Handbook and the required notice was not given; second, that the Agreement provided a procedure for teacher evaluation which was not followed in her case; and third, that she was denied a grievance hearing and the right of arbitration, as provided in the Agreement, concerning her evaluations and the principal's recommendation that her contract be not renewed.

As we will point out, each of these claims involves the application of the law of the State of Colorado.

1. NOTICE PROVISIONS

Para. 6.1.9.1. at page 86 of the *Bylaws, Policies and Procedures* (Exhibit 1) provides in pertinent part:

"6.1.9.1. *Preliminary Warning.* No later than February 1, the principal must give the teacher oral and written warning of his intention to recommend non-renewal of the contract. Reasons for the probationary teacher's contract cancellation would be stated to him at this time."

(Admittedly, this warning was not given.)

Para. 6.1.9.2. at page 86 provides in pertinent part:

"If the Superintendent recommends non-renewal of the contract, based either on his own initiative or the principal's recommendation, he must notify the teacher, in writing, no later than April 1. This notice shall advise the teacher of the intended recommendation, shall include specific charges or grounds for the recommendation, and shall advise the teacher that written request for an audience before the Board, if the teacher so elects, must be submitted within ten days after receipt of this notice. The question of whether the audience shall be public or private shall be determined by the teacher."

Admittedly, plaintiff was notified by Rodriguez on February 28, 1972, of his recommendation of nonrenewal, but there is no evidence that the superintendent complied with the foregoing provisions of the Handbook.

However, an examination of the Agreement (Para. D–2, page 12, Exhibit 2) shows that it provides for notification by the principal by March 1:

"No later than March 1, the principal shall advise the probationary teacher of his intent to recommend to the Board of Education renewal or nonrenewal of his teaching contract.

"A teacher employed by the school district on a full-time basis who has not acquired tenure shall be deemed to be re-employed for the succeeding academic year at the salary which he would be entitled to receive under the teachers' salary schedule unless the Board shall cause written notice to the contrary to be given to said teacher on or before the fifteenth day of April of the academic year during which said teacher is employed."

This notification was given February 28, 1972. The Agreement does not require notification by the superintendent as does the Handbook.

The Agreement also provides at Para. C–1, page 7:

"*The Handbook of Bylaws, Policies and Procedures* defines most operational matters for teachers and other employees. If there is an inconsistency between the Handbook and this Agreement on a matter concerning hours, terms or conditions of employment or an administrative procedure, this Agreement shall govern."

The Colorado Tenure statute provides that to terminate the employment of a nontenured teacher, written notice of the nonrenewal must be given on or before April 15 of that academic year.

Which of these notice provisions governs is a question of state law, the determination of which will determine whether or not the plaintiff has a property interest in continued employment.

## 2. TEACHER EVALUATIONS

Para. D–2 and Para. D–4 at pages 12–13 of the Agreement (Exhibit 2) provide that nontenured teachers will be evaluated by the principal on the basis of personal observations of the teacher's classroom performance when the teacher is aware that she is being evaluated. The teacher is also to be given "constructive leadership and guidance by the administrative staff." Para. 6.1.8.1.1 at page 83 of the Handbook also states the principal must devote "major effort and time to helping the teacher whose work is not acceptable, taking advantage of every available source of assistance."

Plaintiff asserts that the defendants breached the foregoing provisions of the Agreement, in that they did not follow the evaluation procedures and did not furnish constructive leadership and guidance as provided therein and did not provide the teacher assistance as provided in Para. 6.1.8.1.1 of the Handbook.

Assuming that defendants did not comply with the provisions, what is the legal effect of Colorado law? Does this failure on the part of the defendants entitle the plaintiff to tenure as she contends or some other or no relief?

## GRIEVANCE PROCEDURES

The Agreement provides a grievance procedure with various levels or steps which may be taken to hear and determine grievances of employees and if the disposition is not satisfactory to the employee, it provides for arbitration. Plaintiff complains that defendants denied her the use of the grievance procedure and the right of arbitration.

§ G–1, page 43 of the Agreement (Exhibit 2) excludes from the grievance procedure "any matter for which (1) the method of review is prescribed by law - - -."

Assuming the allegations of the plaintiff to be true that she was denied the

use of the grievance procedure and arbitration, her allegations raise two questions of state law:

1. What is the legal effect of the denial of grievance procedure and arbitration to the plaintiff; does such denial thereby entitle her to tenure or some other or no relief?, and

2. Is the renewal or nonrenewal of a nontenured teacher by the School Board a matter excluded from the grievance and arbitration procedure?

By the foregoing enumeration of questions of state law, the Court does not wish to be understood as determining that these are the only questions of state law which may be involved or that all of these questions will require a resolution. The Court has posed the questions to point up the fact that some questions of state law must be answered in order to determine whether or not the plaintiff has a property right in continued employment.

The Colorado Supreme Court, the court of last resort in the State of Colorado, has not answered these questions of state law nor has it rendered any decisions which give to this Court a clear guideline as to the Colorado law applicable to the questions raised. Plaintiff's counsel has cited three decisions of the Colorado Court of Appeals in support of plaintiff's claim. The Court would be remiss if it did not discuss them.

In considering the Court of Appeals decisions, we must bear in mind that the Colorado Court of Appeals is not a court of last resort and therefore, its decisions do not constitute a declaration of law of the State of Colorado as would a decision of the Colorado Supreme Court.

The effect of a Colorado Court of Appeals decision may be gathered from Colorado Appellate Rules § 35(f) which states in pertinent part:

"Only the opinions officially selected for publication shall be binding upon the trial judges of the state of Colorado and shall be considered as stare decisis for the point of law settled therein; provided, however, they do not conflict with any decisions of the Colorado Supreme Court. Denial of certiorari by the Supreme Court shall not necessarily be taken as an approval by the Supreme Court of any opinion of the Court of Appeals."

With this background, the Court comments upon the three Court of Appeals decisions. *Herr v. Adams-Arapahoe Joint School District #32,* Colo.App., 503 P.2d 353 was decided in 1972. *Herr* holds that where the policies of a school district extend the right of a hearing to a nontenured teacher whose employment has not been renewed, then the school district must follow those policies even though the Colorado statutory law does not provide for such a requirement. The *Herr* opinion was not selected for publication and therefore is not considered as stare decisis of the law of Colorado.

*Rockey v. School District No. 11,* 32 Colo.App. 203, 508 P.2d 796, decided in 1973, holds that a collective bargaining agreement with a teachers' association which included a provision for giving currently employed teachers preferential treatment in filling vacant positions was not an unlawful delegation of the school district's authority to hire teachers and staff the schools. The *Rockey* opinion was selected for publication and constitutes stare decisis for that point but still is not a declaration of the law of Colorado on that point by the Court of last resort.

*Silverman v. The University of Colorado,* 541 P.2d 93, was decided in July 1975. In this case, a member of the University of Colorado administration wrote in his official capacity to the plaintiff teacher, a nontenured member of the faculty, that she would be rehired if the recommendations from her peers were satisfactory and if federal funding for her position was obtained. The plaintiff alleged that both conditions were fulfilled. The Court of Ap-

peals held that the allegations in the complaint, if proven, constituted a valid contract for reemployment and therefore a dismissal of the claim was improper. The Court also held that representations to plaintiff by members of the administration that plaintiff's job for the coming academic year was secure and that plaintiff's reliance thereon in failing to secure other employment, constituted a valid claim based on estoppel.

The *Silverman* case was selected for official publication but that this does not constitute a final declaration of the law of the State of Colorado is indicated by the fact that the Colorado Supreme Court on October 20, 1975, granted certiorari for a review of the decision.

■ We conclude that it would be pure speculation on this Court's part to attempt to predict the answers which the Colorado Supreme Court would provide to these questions of state law, which have been raised by the plaintiff in her first statement of claim.

We prefer not to engage in such speculation, but rather to follow the admonition of Mr. Chief Justice Burger in his concurring opinion in *Board of Regents v. Roth* and *Perry v. Sindermann*, 408 U.S. 564, 92 S.Ct. 2701 and 408 U.S. 593, 92 S.Ct. 2717, 33 L.Ed.2d 581 which we here set forth:

"I concur in the Court's judgment and opinions in *Sindermann* and *Roth*, but there is one central point in both decisions that I would like to underscore since it may have been obscured in the comprehensive discussion of the cases. That point is that the relationship between a state institution and one of its teachers is essentially a matter of state concern and state law. The Court holds today only that a state-employed teacher who has a right to re-employment under state law, arising from either an express or implied contract, has, in turn, a right guaranteed by the Fourteenth Amendment to some form of prior administrative or academic hearing on the cause for nonrenewal of his contract. Thus,

whether a particular teacher in a particular context has any right to such administrative hearing hinges on a question of state law. The Court's opinion makes this point very sharply:

'Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . .' *Board of Regents v. Roth, ante,* at 577 [, 92 S.Ct. 2701.]

"Because the availability of the Fourteenth Amendment right to a prior administrative hearing turns in each case on a question of state law, the issue of abstention will arise in future cases contesting whether a particular teacher is entitled to a hearing prior to nonrenewal of his contract. If relevant state contract law is unclear, a federal court should, in my view abstain from deciding whether he is constitutionally entitled to a prior hearing, and the teacher should be left to resort to state courts on the questions arising under state law."

We conclude that the Court should abstain from further proceedings in this matter to permit the plaintiff to litigate the questions of state law here involved in the Courts of the State of Colorado.

## ORDER

It is therefore ordered that final judgment of dismissal with prejudice of the second, third, and fourth statements of claim enter forthwith, but that the damage claim contained in the fourth statement of claim shall be considered as a part of the plaintiff's first statement of claim and the dismissal of the fourth statement of claim with prejudice shall not dismiss the plaintiff's claim for money damages for "emotional stress - - -."

It is further ordered that the Court shall abstain from further proceedings in the plaintiff's first statement of claim to permit the plaintiff to litigate the questions of state law involved in

that claim in the Courts of the State of Colorado and to that end,

It is further ordered that the first statement of claim be dismissed without prejudice to reinstituting the first statement of claim after the questions of state law have been finally determined by the Courts of the State of Colorado.